**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MEI PING (BARBARA) MATSUMURA;
and CARL MILNER, AS TRUSTEE OF
THE TRUST U/W/O ARTHUR CUTLER,

Plaintiffs,

v.

BENIHANA NATIONAL
CORPORATION; HARU HOLDING
CORPORATION; and DARWIN
DORNBUSH,

Defendants.

Case No. **06 CV 7609**

**NOTICE OF REMOVAL**

**JUDGE BUCHWALD**

RECEIVED
SEP 2 1 2006
U.S.D.C. S.D.N.Y.
CASHIERS

Pursuant to 28 U.S.C. §§ 1441 and 1446 and S.D.N.Y. Local Rule 81.1,

Defendants Benihana National Corporation ("Benihana"), Haru Holding Corporation ("Haru"),

and Darwin Dornbush, by their respective attorneys, hereby remove this action, styled *Mei Ping*

*(Barbara) Matsumura; and Carl Milner, as Trustee of the Trust U/W/O Arthur Cutler* v.

*Benihana National Corporation; Haru Holding Corporation; and Darwin Dornbush*, and

bearing Case No. 06 603001, from the Supreme Court of the State of New York, County of

New York, to the United States District Court for the Southern District of New York.  In support

of removal, Defendants state as follows:

## PROCEDURAL HISTORY

1.      Plaintiffs Mei Ping Matsumura ("Matsumura") and Carl Milner, as Trustee

of the Trust U/W/O Arthur Cutler, filed a complaint in this action (the "Complaint") on

August 25, 2006 in the Supreme Court of the State of New York, County of New York, asserting

nine state law claims against Defendants Benihana, Haru, and Darwin Dornbush.

## PARTIES

2.      Matsumura, according to the Complaint, is a New York citizen, residing in New York County. Complaint ¶ 2.

3.      Carl Milner, according to the Complaint, is also a New York citizen, residing in New York County, and the Trust for which he is the Trustee exists and is administered pursuant to New York law. Complaint ¶ 3.

4.      Benihana is, and at the time of the filing of the Complaint was, a Delaware corporation with its principal place of business in Miami, Florida.  Through counsel, Benihana accepted service of the Summons and Complaint on or about August 25, 2006.

5.      Haru, a nominal Defendant in this action, is, and at the time of the filing of the Complaint was, also a Delaware corporation with its principal place of business also in Miami, Florida. Through counsel, Haru accepted service of the Summons and Complaint on or about August 25, 2006.

6.      Darwin Dornbush is, and at the time of the filing of the Complaint was, a Florida citizen, domiciled and residing at 211 Island Drive, Jupiter, Florida 33477.  Through counsel, Dornbush accepted service of the Summons and Complaint on or about August 25, 2006.

## GROUNDS FOR REMOVAL

7.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties, and none of the parties in interest properly joined and served as a defendant is a citizen of the state in which the action has been filed.

8.    Also, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. *See* Complaint, Prayer for Relief, at p. 23 (demanding compensatory damages of more than $14 million plus punitive damages).

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

9.    This notice of removal has been filed within thirty days of receipt of the Summons and Complaint and is therefore timely under 28 U.S.C. § 1446(b).

10.    In compliance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and other orders served upon Defendants are attached hereto as composite Exhibit A.

11.    Pursuant to 28 U.S.C. § 1446(d), Defendants will provide written notice to Plaintiffs' counsel and will file a copy of this Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of New York.

WHEREFORE, Defendants submit this matter to this Court's jurisdiction.

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Lewis R. Clayton (LC-7207)
Amir Weinberg (AW-3368)
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

-and-

3

STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
  Alan H. Fein
  Adam M. Schachter (AS-5848)
  Museum Tower, Suite 2200
  150 West Flagler Street
  Miami, Florida 33130
  (305) 789-3200

  *Attorneys for Defendants Benihana National
  Corporation* and *Haru Holding Corporation*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, P.A.
  Jonathan J. Lerner (JL-7117)
  Maura Barry Grinalds (MG-2836)
  Four Times Square
  New York, NY 10036
  (212) 735-2550

  *Attorneys for Defendant Darwin Dornbush*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

MEI PING (BARBARA) MATSUMURA; and          Index Number: 06\603001
CARL MILNER, AS TRUSTEE OF THE TRUST
U/W/O ARTHUR CUTLER,

                              Plaintiffs,        Date purchased: 8/25/06

         -against-

BENIHANA NATIONAL CORPORATION;
HARU HOLDING CORP.; and                          **SUMMONS**
DARWIN DORNBUSH,
                              Defendants.
-------------------------------------------------------------------x

TO THE ABOVE-NAMED DEFENDANTS:

        You are hereby summoned and required to serve upon plaintiffs' attorney an answer to

the complaint in this action within twenty days after the service of this summons, exclusive of the

day of service, or within thirty days after service is complete if this summons is not personally

delivered to you within the State of New York.  In case of your failure to answer, judgment will

be taken against you by default for the relief demanded in the complaint.

        Plaintiff designates New York County as the venue for this action.  The basis for the

NEW YORK
COUNTY CLERK'S OFFICE

AUG 25 2006

NOT COMPARED
WITH COPY FILED

*(Continued on Next Page)*

venue is that New York County is the residence of the plaintiffs and it is where the cause of
action arose.

DEUTSCH, COFFEY & METZ, LLP

By: _Alfred N. Metz_
Alfred N. Metz
Attorneys for Plaintiffs
18 East 41st Street, Sixth Floor
New York, New York 10017
(212) 684-1111

To:
Benihana National Corporation
c/o Secretary of State of the State of New York
41 State Street
Albany, NY 12231

Haru Holding Corp.
c/o Secretary of State of the State of New York
41 State Street
Albany, NY 12231

and

Darwin Dornbush
c/o Dornbush Schaeffer Strongin & Venaglia, LLP
747 Third Avenue
New York, NY 10017

-2-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------x

Mei Ping (Barbara) Matsumura and
Carl Milner, as Trustee of the Trust
U/W/O Arthur Cutler,

                              Plaintiffs,

        -against-                                        INDEX NO. 06\603001

Benihana National Corporation,
Haru Holding Corp., and
Darwin Dornbush,

                              Defendants.

-------------------------------------------------------x

## COMPLAINT

NEW YORK
COUNTY CLERK'S OFFICE

AUG 2 5 2006

NOT COMPARED
WITH COPY FILED

DEUTSCH, COFFEY & METZ, LLP
Attorneys for Plaintiffs
18 East 41 Street, 6th Floor
New York, NY 10017
(212) 684-1111

<u>TABLE OF CONTENTS</u>

<u>Page</u>

THE PARTIES AND RELATED ENTITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ALLEGATIONS COMMON TO ALL COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     a)     Dornbush Proposes that BNC
             Purchase An 80% Interest In Haru . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     b)     BNC Contracts To Buy 80% of Haru . . . . . . . . . . . . . . . . . . . . . . . . 3

     c)     BNC Amends The Purchase Agreement . . . . . . . . . . . . . . . . . . . . . . . . 5

     d)     Following The Closing BNC Managed Haru
             As If It Were A Wholly Owned Subsidiary,
             To The Detriment of Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     e)     Plaintiffs' Exercise Of Their Put Option . . . . . . . . . . . . . . . . . . . . . . . 10

COUNT I:    BREACH OF FIDUCIARY DUTY . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

COUNT II:   FRAUD IN THE INDUCEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

COUNT III:  CONSTRUCTIVE FRAUD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

COUNT IV:  BREACH OF CONTRACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

COUNT V:   UNJUST ENRICHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

COUNT VI:  CONSTRUCTIVE TRUST AND ACCOUNTING . . . . . . . . . . . . . . . . . . 20

COUNT VII: MONIES DUE AND OWING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

COUNT VIII: BREACH OF FIDUCIARY DUTY . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

COUNT IX:  NEGLIGENT MISREPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . 22

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Plaintiffs, by their attorneys, as and for their complaint allege, at all times material:

1.     This is an action by minority shareholders of Haru Holding Corp. ("Haru") against the majority shareholder for breach of fiduciary duty in artificially depressing the price of a put option for the shares of the minority shareholders, for self-dealing and other breaches of fiduciary duty, and for other causes of action.

## THE PARTIES AND RELATED ENTITIES

2.     Plaintiff Mei Ping Matsumura, a/k/a Barbara Matsumura ("Matsumura"), resides in New York County and owns 18% of the stock of Haru.

3.     Carl Milner resides in New York County and is the Trustee of the Trust U/W/O Arthur Cutler, who died in June 1997 (the "Trust"). The Trust owns 2% of the stock of Haru, which was formerly owned by Arthur Cutler, and which passed into his estate upon his death (the "Estate"). Pursuant to his will and administration of the Estate, the shares of Haru are now being held by the Trust. The Estate and the Trust are being administered pursuant to the laws of the State of New York, in New York County.

4.     Defendant Benihana National Corporation ("BNC") is a Delaware corporation, authorized to do and doing business in New York and New York County. BNC is a publicly traded entity engaged in the restaurant business and is the owner of 80% of Haru.

5.     Defendant Haru Holding Corp. is a Delaware corporation authorized to do and doing business in New York and New York County.

6.     Defendant Darwin Dornbush ("Dornbush") is a director of BNC and Haru. He is also a member of the New York Bar, and at all relevant times, Dornbush was and is a principal of the law firm of Dornbush, Schaeffer, Strongin & Venaglia, LLP (the "Dornbush Firm"), whose principal place of business is New York and New York County. Upon information and belief,

the Dornbush Firm was formerly known as, and/or is the successor to, Dornbush, Mensch, Mandelstam & Schaeffer, LLP.

7.      The acts giving rise to the causes of action enumerated herein took place in New York and New York County.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      Matsumura and Arthur Cutler separately and together successfully operated restaurants. In 1996, Matsumura, Arthur Cutler and others opened a sushi restaurant named Haru in Manhattan, and thereafter opened a second Haru restaurant in Manhattan. Title to the restaurants was held by two New York corporations: Haru Food Service Inc. and 1329 Third Avenue Food Service, Inc., which, in turn, were beneficially 100% owned by Matsumura, Tsu Wang ("Wang") and Arthur Cutler (and later by the Estate).

9.      Dornbush represented and was advisor to Arthur Cutler and various entities he owned. After Arthur Cutler died, Dornbush represented the Estate, Arthur's widow Alice Cutler (who was also Executrix of the Estate), and her brother, Carl Milner (collectively, the "Cutlers") in a range of matters through at least the spring of 2004.

10.     Dornbush represented and was advisor to the owners of the Haru restaurants, including Matsumura, from 1999 through at least 2003, in connection with the affairs of Haru and other matters.

-2-

a.    **Dornbush Proposes that BNC**
      **Purchase An 80% Interest In Haru**

11.    In early 1999, Dornbush proposed that BNC purchase the Haru restaurants. In or

about May 1999, Dornbush transmitted a term sheet to the owners of the Haru restaurants under

which BNC would purchase 80% of the stock of the two Haru restaurants and the lease for a

planned third Haru restaurant.  Dornbush thereafter conducted negotiations between BNC and the

owners of Haru as counsel for all parties, throughout the spring and summer of 1999.

12.    Following an agreement in principle, in or about July 1999, Dornbush told the

owners of the Haru restaurants that they would be represented by a new attorney in connection

with the closing, and directed them to Michael Paikin, Esq.  Nevertheless, throughout the

negotiation with BNC, Dornbush continued to give advice and counsel to Plaintiffs in connection

with the proposed transaction and thereafter, including how to best structure the transaction in

order to minimize their personal tax burdens and otherwise.

13.    In July 1999, pursuant to Dornbush's direction, the owners of Haru Food Service

Inc. and 1329 Third Avenue Food Service, Inc. exchanged their shares for shares in a new

Delaware corporation -- Haru.  The documents were drafted by Dornbush and his firm.  As a

result, the stock of Haru came to be held by Wang and Matsumura.  Arthur Cutler was the

beneficial owner of 20 shares of Haru, of which the record owner was Wang.  After Arthur

Cutler's death, beneficial ownership of those shares passed to the Estate.

b.    **BNC Contracts To Buy 80% of Haru**

14.    On or about August 5, 1999, BNC, Matsumura and Wang executed a Stock

Purchase Agreement (the "Purchase Ag.") whereby BNC contracted to purchase 80% of the

outstanding stock of Haru and other assets.  The Purchase Ag. was drafted by Dornbush and his firm and obligated the parties to use "commercially reasonable efforts to cause the transaction . . . to be consummated at the earliest practicable date."

15.     Under the Purchase Ag., subject to its terms, BNC became legally obligated to purchase and the selling shareholders became legally obligated to sell 80% of the shares of Haru. BNC signed the agreement by its president Joel Schwartz.

16.     On signing and subject to closing of the Purchase Ag., Plaintiffs equitably became minority shareholders and BNC equitably became the majority shareholder of Haru.

17.     BNC, from August 6, 1999 forward, owed the minority shareholders, including Plaintiffs, fiduciary duties of loyalty, candor, good faith, and fair dealing.

18.     Section 11.1 of the Purchase Ag. provided that: "[e]xcept as otherwise provided hereto, the parties hereto shall each bear its own expenses in connection with the transactions contemplated by this Agreement . . . ."

19.     The Purchase Ag. required the Sellers, BNC and Haru to enter into a stockholders agreement in substantially the form attached to the Purchase Ag.  The stockholders agreement contained a "Put Option" allowing the minority shareholders of Haru to put and requiring BNC to purchase, their minority interest of Haru.  The option price was the fair market value of the shares as negotiated between the minority shareholders and BNC.  If the parties could not agree on the fair market value, the parties would select an investment banking firm with expertise in the restaurant industry to fix the price but its discretion was limited to selecting either the last offer of BNC or the last offer of the minority shareholders.

20.     BNC and Dornbush represented to Plaintiffs, prior to and after execution of the

-4-

Purchase Ag., and until shortly before the execution of their Put Option, that the mechanism for pricing the Put Option would provide them with the fair market value of their stock in Haru. Dornbush further represented to Plaintiffs that by retaining 20% of Haru with a "Put Option" to sell at a later date, Plaintiffs would reap the benefits of the opening of new Haru restaurants which would be funded by BNC. These representations were material and plaintiffs relied upon them in executing the Purchase Ag., in consummating the transaction, and in exercising their Put Option.

21.     Plaintiffs complied with all of their obligations under the Purchase Ag.

**c.     BNC Amends The Purchase Agreement**

22.     In November 1999, Dornbush and BNC drafted and presented an amendment to the Purchase Ag. which the parties executed on or about November 12, 1999 (the "Nov. Amend.").

23.     In connection with the Nov. Amend., BNC and Dornbush restructured the share ownership of the minority 20% interest in Haru by providing, *inter alia*, that Matsumura would in effect "purchase" Wang's shares in Haru. Upon completion of the transaction, BNC would own 800, or 80%, of the shares of Haru; Matsumura would own 180, or 18%, of the shares; and the 20 shares (2%) beneficially owned by the Estate of Arthur Cutler would be recognized as being of record. Dornbush and his firm advised and formulated the method for this purchase and drafted the amendment, ostensibly to limit the tax consequences to Matsumura and Wang.

24.     The Nov. Amend. reduced the price to be paid to Plaintiffs for 80% of the common stock of Haru to $6 million, plus a payment of $2.125 million for the assignments of certain leases, subject to adjustments (the "$8.125 Million Paid").

-5-

25.     The Nov. Amend. attached a new Stockholders Agreement, to be dated in December (the "New Stockholders Ag.") which provided that Plaintiffs' Put Option could only be exercised between July 1 and September 30, 2005. The New Stockholders Ag. was drafted by BNC and Dornbush.

26.     The New Stockholders Ag. changed the "Put Price" from fair market value to a formula of (a) four and one-half times (b) the Consolidated Cash Flow of Haru for the fiscal year ended the preceding July 1, 2005, (c) less the amount of Haru's debt, (d) divided by shares of common stock outstanding. Consolidated Cash Flow was defined as consolidated net operating income of Haru less certain deductions and adjustments as provided therein.

27.     Haru's Debt was defined as the total of all indebtedness of Haru and its subsidiaries, including debt owed to stockholders of Haru and interest thereon.

28.     The New Stockholders Ag., at Section 3.7, required that:

>   The Calculation of Consolidated Cash Flow of the Company shall be made in accordance with GAAP and the books and records of [Haru's] (and its subsidiaries) business shall be maintained in such a manner as to allow for such computation to be fairly determined.

29.     The New Stockholders Ag. at page 4 provided that GAAP means:

>   generally accepted accounting principles for the restaurant industry as in effect on the date of this agreement, applied on a consistent basis throughout any given period of measurement.

30.     The New Stockholders Ag. required that, if Plaintiffs objected to BNC's calculation of Consolidated Cash Flow, the parties were obliged to negotiate in good faith to resolve any dispute with respect thereto.

31.     The Nov. Amend. did not alter the Purchase Ag. which required each party bear

-6-

its own expenses in connection with the transaction.

32.   On or about December 6, 1999, the transaction closed and the New Stockholders Ag. was executed by BNC, Haru, the Estate and Matsumura (the "Closing"). Joel Schwartz, president of BNC signed the agreements on behalf of BNC and Haru.

33.   Prior to and as of the date of Closing, Haru had no long-term debt and only limited accounts payable to suppliers in the ordinary course of business.

34.   Prior to and after Closing, BNC and Dornbush represented to Plaintiffs that the purpose of the change in the pricing formula of the Put Option was to make its calculation more concrete, and that it was still to reflect the fair market value of their 20% interest in Haru.

35.   As the equitable majority shareholder of Haru, BNC had an obligation to disclose to the Plaintiffs that, under the new formula for valuation of the Put Price it intended to materially reduce the value of the Put Price, on its exercise, by deducting the $8.125 Million Paid therefrom plus all interest incurred, and they did not so disclose.

36.   At the Closing, Matsumura entered into an employment agreement with Haru, as Vice President and Chief Operating Officer, for a term of three years. Matsumura accepted a salary which was lower than would fully compensate her for her time and expertise, upon the representations of BNC and Dornbush that her full compensation would be realized in the value of her Put Option. In 2002, Matsumura agreed to BNC's request to extend her employment agreement for three years on similar terms, again upon the representations of BNC and Dornbush that the true value of her compensation would come in the exercise of her Put Option.

-7-

      **d.**    **Following The Closing, BNC Managed Haru**
              **As If It Were A Wholly Owned Subsidiary,**
              **To The Detriment of Plaintiffs**

37.    Upon information and belief, following the Closing and through 2005, BNC did not permit Haru to conduct any shareholders' meeting. This was in violation of the requirements of both Delaware law and Haru's corporate documents, that a shareholders' meeting must be held annually. Haru did not conduct any board of directors' meeting during that period. Upon information and belief, BNC and Dornbush ignored the separate corporate existence of Haru. Upon information and belief, neither BNC nor Haru complied with corporate formalities for Haru, and BNC treated Haru as a wholly owned subsidiary in violation of their contractual and fiduciary duties to the minority shareholders.

38.    Upon information and belief, following the Closing and unknown to Plaintiffs until much later, BNC forced Haru to assume approximately $9.2 million in debt to BNC, which included:

    (a)    the $8.125 Million Paid by BNC to Plaintiffs to acquire its 80% shareholding in Haru;

    (b)    $396,426 for BNC's legal and investment banking fees in acquiring its 80% shareholding on Haru, including approximately $200,000 in fees to Dornbush;

    (c)    $214,103 for the security deposit and monthly rent for the Times Square Haru; and

    (d)    approximately $500,000 in connection with the start-up of Philadelphia Haru, Gramercy Park Haru, and/or other ventures BNC planned for Haru.

39.     From the Closing and through 2005, BNC required Haru to transfer, and Haru did transfer, all available cash and profits to BNC through inter-corporate transfers, on a daily or weekly basis, in disregard of the interests of the Plaintiffs as minority shareholders.

40.     Upon information and belief, these transfers aggregated in excess of $24 million following the Closing and through the date the Plaintiffs exercised their Put Option.  No part of such transfers were paid to the Plaintiffs.  Such transfers were in violation of BNC's and Haru's fiduciary duties to the Plaintiffs and BNC's and Haru's obligations of fair dealing.  Plaintiffs are entitled to 20% of the $24 million taken by BNC from Haru.

41.     Upon information and belief, Haru, under the management of Matsumura, generated sufficient revenues and cash flow to fund the costs of the opening of the new Haru restaurants and little, if any external debt was needed.

42.     Upon information and belief, rather than use the Haru generated funds for the opening of new Haru restaurants, BNC entered into a scheme to "double dip" to the detriment of the minority shareholders:  BNC caused the cash generated by Haru to be upstreamed to BNC to the exclusion of the minority shareholders and, at the same time, imposed debt on Haru to fund the opening of new Haru restaurants in violation of the agreements and in violation of the fiduciary duties that BNC and Haru owed Plaintiffs.

43.     BNC's requirement that Haru recognize $9.2 million in debt as heretofore alleged was in violation of GAAP.

44.     BNC's inclusion of interest upon such debt as a liability of Haru is in violation of GAAP.

45.     BNC's inclusion of the opening and other costs associated with new restaurants in

-9-

Haru's debt and liabilities, while at the same time extracting all available cash from Haru, as alleged above, was in violation of GAAP.

46.     BNC's inclusion of the $9.2 million debt, and interest thereon, in its calculation of the Put Price was in violation of GAAP.

47.     From the time BNC acquired its 80% interest in Haru, BNC gave Matsumura, on a monthly basis through March 2005, "Consolidated Statements of Operations" for Haru ("CSO"). The CSO listed the revenues and expenses of Haru. The CSO did not show any debt due from Haru to BNC. BNC never gave Matsumura any financial statements showing that Haru owed BNC any money.

48.     The annual financial statements of BNC were publically reported on a consolidated basis. The debt that BNC imposed on Haru was not disclosed or separately reported.

49.     In November 2004, Matsumura met with Dornbush to discuss her concerns about Haru's new restaurants. Dornbush confirmed that he understood that the Put Price was interpreted as "No Benefit, No Burden" so that in calculating the Put Price, the costs of opening new Haru restaurants would not be attributed to the minority shareholders, because they would not obtain any benefit flowing from these expenses since the Put Option would have to be exercised in 2005. Dornbush told Matsumura, for the first time, that he would confirm this with BNC.

50.     Based on the foregoing, Matsumura continued working with Haru to open new restaurants in New York and Philadelphia while still running the original two Haru restaurants as well as three other Haru restaurants that she had opened in New York.

e.     **Plaintiffs' Exercise of their Put Option**

51.     Plaintiffs timely exercised their Put Option under the New Stockholders Ag..

-10-

52.     On June 13, 2005, BNC provided Plaintiffs with its calculation of the amount due Plaintiffs on the Put Option as approximately $3.7 million.  Upon information and belief, this calculation was based at least in part upon the deduction of the approximately $9.2 million in debt which BNC forced Haru to recognize, and which included its own purchase price and its associated expenses, as alleged above.  The effect of this inclusion alone would depress the value of Plaintiff's Put Option by 20% of $9.2 million, or approximately $1,840,000.

53.     Plaintiffs advised BNC that its calculation of the amount due to Plaintiffs of the Put Price was wrong and sought to engage in good faith negotiations with BNC regarding the dispute as required by the Agreements.  BNC has refused to negotiate.  Despite request, BNC has failed to provide a breakdown of the elements it included in Haru's debt for purposes of calculating the Put Price.  Pursuant to the agreement of the parties, Plaintiffs sought mediation, but BNC withdrew from participation at the last moment.  Plaintiffs have satisfied any and all conditions precedent to the institution of this legal action.

54.     Plaintiffs demanded disbursement of the amount BNC admitted to be due.  BNC failed to remit such sum.

55.     In June 2006, BNC advised that it placed the sum of $3,717,996.20 in escrow with its counsel awaiting plaintiffs' instructions.  Plaintiffs have acknowledged such placement and reserved all rights.

## COUNT I
## (BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS)

56.   Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth and further allege as follows.

57.   From the time BNC signed the Purchase Ag. and became legally and/or equitably bound to acquire the stock of Haru and, in no event later than the Closing, BNC was the majority shareholder of Haru and controlled the management and finances of Haru.

58.   BNC was thereby a fiduciary to Plaintiffs and owed to Plaintiffs:  a duty of utmost loyalty; a duty of candor and full disclosure of all material facts within its knowledge; and a duty of utmost good faith and fair dealing.

59.   Haru had one class of stock and had a fiduciary obligation to treat all of its shareholders in the same manner, including with respect to the distributions it made of profits and cash.

60.   BNC and Haru breached their fiduciary duties to Plaintiffs by engaging in the conduct as set forth above, including but not limited to:

(a)   failing to disclose their intent to make the Plaintiffs bear the costs of BNC's acquisition of 80% of Haru, including the $8.125 Million Paid and the costs and expenses associated therewith;

(b)   failing to disclose their intent to deprive Plaintiffs of the fair market value of their 20% share in Haru;

(c)   failing to disclose their intent to withhold from Plaintiffs the fair market value of Haru by upstreaming income and profits from Haru to BNC;

-12-

(d)    forcing Haru to recognize, as debt to BNC, the very purchase price incurred by BNC in acquiring 80% of Haru, thereby making Plaintiffs bear the expense of such price;

(e)    forcing Haru to recognize, as debt to BNC, BNC's costs and expenses in connection with the acquisition of 80% of Haru, thereby making Plaintiffs bear the expense of such costs and expenses;

(f)    forcing Haru to recognize, as debt to BNC, the start-up costs of new Haru restaurants and other debt related to incipient ventures of Haru, but at the same time extracting for itself all of the available cash from Haru to the detriment of Plaintiffs;

(g)    including in Haru's debt, for purposes of the Put Price calculation, BNC's purchase price incurred in acquiring 80% of Haru, thereby making Plaintiffs bear the expense of such price;

(h)    including in Haru's debt, for purposes of the Put Price calculation, BNC's costs and expenses in connection with the acquisition of 80% of Haru, thereby making Plaintiffs bear the expense of such costs and expenses;

(i)    including in Haru's debt, for purposes of the Put Price calculation, the start-up costs of new Haru restaurants and other debt related to incipient ventures of Haru, but at the same time extracting for itself all of the available cash from Haru to the detriment of Plaintiffs;

(j)    requiring Haru to recognize debt and upstream income, in violation of GAAP;

-13-

(k)    calculating Haru's debt, including for purposes of the Put Price calcula-
tion, in violation of GAAP;

(l)    failing to pay dividends and cash distributions in proportion to the stock
interests held;

(m)    diverting all or disproportionate amounts of Haru's profits to BNC;

(n)    failing to hold shareholders and directors meetings of Directors of Haru;
and

(o)    acting solely in the interests of BNC, rather than in the interests of Haru
and its minority shareholders.

61.    Dornbush knew of the duties owed by BNC and Haru to Plaintiffs.  Dornbush
knew of the acts by BNC and Haru alleged herein to constitute breaches of fiduciary duty to
Plaintiffs, and of the breaches of duty.  Dornbush rendered substantial assistance to BNC and
Haru in such breaches of duty by his acts as set forth herein, including without limitation:  his
advice to Plaintiffs; his nondisclosures to Plaintiffs of BNC's, Haru's and his actual intent; and
his acts to structure and effectuate the transaction by which Plaintiffs have been deprived of the
value of their shareholding.

62.    Upon information and belief, BNC/Haru and Dornbush entered into a conspiracy
to deprive Plaintiffs of property in violation of the fiduciary duties of BNC and Haru.  Upon
information and belief, Dornbush intentionally engaged in overt acts in furtherance of said
conspiracy, including without limitation the acts set forth in the preceding paragraph.

63.    As a direct result of BNC's, Haru's and Dornbush's actions, Plaintiffs have
suffered compensatory damages of not less than $10.7 million.

-14-

64.     Defendants are liable to Plaintiffs not only for the amount of losses incurred by Plaintiffs, but for the amounts of all gains received by Defendants as a consequences of their breaches of duty.

## COUNT II
### (FRAUD IN THE INDUCEMENT AGAINST BNC AND DORNBUSH)

65.     Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

66.     BNC and Dornbush induced Plaintiffs to close the transaction based upon their false representations that, upon exercise of the Put Option, Plaintiffs would receive the fair market value of their remaining 20% share of Haru and not that the value would be artificially reduced.

67.     BNC and Dornbush falsely represented that the Put Option would be priced at the fair market value and not that the value would be artificially reduced and falsely represented that the parties would negotiate in good faith to achieve that result.

68.     BNC and Dornbush induced Plaintiffs to enter the November Ag. and to Close based upon their false representations that the Put Option would be valued in accordance with GAAP.

69.     BNC and Dornbush induced Plaintiffs to close by their omission to advise that they intended to use the Put Price Formula to deprive plaintiffs of the fair market value of their 20% share in Haru.

70.     Upon information and belief, BNC, Haru and Dornbush knew that their represen-

-15-

tations and omissions were false when made, in that they did not intend to compensate Plaintiffs for the fair market value of their 20% share of Haru.

71.   Upon information and belief, Defendants knew that Plaintiffs would rely upon their omission to advise that they intended to use the Put Price Formula to deprive Plaintiffs of the fair market value of their 20% share in Haru.

72.   Plaintiffs relied upon defendants representations and omissions in determining to enter into the transactions and to Close them and thereafter and Matsumura did the same with respect to her Employment Agreement.

73.   Defendants' misrepresentations and omissions were material and Plaintiffs reasonably relied upon them.  As a direct result of BNC's and Dornbush's actions, Plaintiffs have suffered compensatory damages of not less than $10.7 million.

## COUNT III
### (CONSTRUCTIVE FRAUD AGAINST BNC AND DORNBUSH)

74.   Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

75.   Defendants engaged in a scheme to mislead Plaintiffs through a series of materially false representations and omissions regarding their intent and the true nature of the way and manner in which the Put Price would be calculated by BNC all of which defendants had legal obligations to truthfully and accurately disclose and which information was peculiarly within the knowledge of defendants. Defendants knew that if they had made full and truthful disclosure that Plaintiffs would not have entered into the agreements with them and continued to

-16-

perform.

76.     Defendant BNC had an obligation from the time of the signing of the Purchase Ag. to make truthful disclosure.

77.     Defendant Dornbush had an obligation at all times to make truthful disclosure to Plaintiffs.

78.     Defendants made those false omissions and representations to deceive and to induce plaintiffs to transfer to them the 80% interest in Haru and thereafter the right to purchase the 20% interest for less than the actual value of such interest.

79.     Plaintiffs reasonably relied on Defendants' misrepresentations and omissions and such reliance proximately harmed Plaintiffs by causing them to agree to sell their interests in Haru for less than its true value.

80.     The transfer of Plaintiffs' interests in Haru was procured through Defendants' fraudulent omissions, and misrepresentations and breaches of fiduciary duty.

81.     Plaintiffs have been deprived of the value of their interests.  As a direct result of BNC's Dornbush's actions, Plaintiffs have suffered compensatory damages of not less than $10.7 million.

## COUNT IV
## (BREACH OF CONTRACT AGAINST BNC AND HARU)

82.     Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

83.     BNC owed contractual obligations to Plaintiffs pursuant to the Purchase Ag. as set

-17-

forth above.  BNC and Haru owed contractual obligations to Plaintiffs pursuant to the New Stockholders' Ag. as set forth above.

84.  BNC has breached Section 11.1 of the Purchase Ag. in not bearing their own expenses, and in forcing the Plaintiffs to bear those expenses by, inter alia, passing the very cost of BNC's purchase of Haru, and associated expenses, on to Plaintiffs in the form of "debt" ostensibly transferred to Haru's books.

85.  BNC and Haru have breached their obligations to Plaintiffs under the New Stockholders' Ag. by engaging in the conduct set forth above, including:

(a)  manipulating the accounting charges to improperly and artificially depress the Put Price for Plaintiffs' minority interest in Haru;

(b)  disregarding Haru's independent corporate existence;

(c)  failing to negotiate in good faith once a dispute regarding the Put Price arose; and

(d)  failing to pay Plaintiffs the minimum $3.7 million it has admitted as owed to Plaintiffs based on its improper calculation of the Put Price.

86.  BNC's and Haru's conduct constitutes a breach of the covenants of good faith and fair dealing implied in all contracts.  BNC and Haru have breached express contractual obligations to negotiate in good faith.

87.  As a direct result of BNC's and Haru's breaches of its contractual obligations to Plaintiffs, Plaintiffs have suffered compensatory damages of not less $10.7 million.

-18-

## COUNT V
## (UNJUST ENRICHMENT AGAINST BNC)

88.    Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

89.    Owing to BNC's improper acts as heretofore alleged, BNC has been unjustly enriched, by virtue of, inter alia:

      (a)    the sums of which it has deprived Plaintiffs through its manipulation of the Put Price calculation, including without limitation its inclusion of $9.2 million as debt of Haru;

      (b)    the looting of Haru's income and profits by up streaming such to BNC, to the detriment of the minority shareholders of Haru;

      (c)    profits upon the 150 shares of Haru sold by Matsumura to BNC in connection with the transaction and thereafter held by BNC;

      (d)    the value of Matsumura's services and expertise under her employment contract; and

      (e)    the "double dipping" treatment as heretofore alleged.

90.    Plaintiff are entitled to all income, gains and other profits which have unjustly accrued to the defendants as a result.

91.    It is against equity and good conscience to permit the Defendants to keep the benefits of those breaches of fiduciary duties.

92.    Defendants have been unjustly enriched and are liable to Plaintiffs in an amount that will compensate them for the difference between the true value of their interest in Haru at the

-19-

time of the Put and the price calculated by BNC, together with all income, gains and other profits which have accrued to the defendants as a result, such amounts to be determined by the trier of the facts, but in no event less than $5.9 million.

## COUNT VI
## (CONSTRUCTIVE TRUST AND ACCOUNTING AGAINST BNC AND HARU)

93.     Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

94.     As heretofore alleged, BNC and Haru owed fiduciary obligations to Plaintiffs.

95.     BNC and Haru breached their fiduciary obligations to Plaintiffs, as heretofore alleged by, inter alia, causing Haru to transfer to BNC all available cash and profits of Haru as if BNC were a 100% shareholder of Haru.

96.     Plaintiffs are entitled to 20% of the profits taken by BNC from Haru.

97.     The Defendants are in exclusive possession of all information regarding the amounts taken and profits made, and Plaintiffs do not have access to this information.

98.     Plaintiffs are entitled to an accounting from the Defendants and such an accounting is necessary to fully determine their rights.

99.     Defendants should be made to account for all monies taken together with all cash, gains and other benefits which have accrued to BNC as a result thereof and such funds are held by BNC in trust for the benefit of Plaintiffs.

100.    Plaintiffs have no adequate remedy at law and will suffer irreparable harm unless a trust is impressed on such funds together with all income, gains and other profits which have

-20-

accrued to Defendants by reason thereof.

## COUNT VII
### (MONIES DUE AND OWING AGAINST BNC)

101.   Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

102.   BNC admits it owes Plaintiffs on account of their exercise of the Put Option not less than $3,717,960.20 and has put that amount in escrow.  Plaintiffs are entitled to more.

103.   The $3.7 million is undisputed as due and owing and Plaintiffs are entitled to payment of $3.7 million now.

## COUNT VIII
### (BREACH OF FIDUCIARY DUTY AGAINST DORNBUSH)

104.   Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

105.   In rendering advice to Plaintiffs' in connection with the transactions by which Plaintiffs were induced to enter into the agreements as alleged, and by contemporaneously representing Plaintiffs in a range of other matters, in Dornbush undertook fiduciary duties of loyalty, candor and due care to Plaintiffs.

106.   Dornbush breached his fiduciary duties to Plaintiffs and Plaintiffs, as a direct result of Dornbush's actions, have suffered compensatory damages of not less than $10.7 million.

## COUNT IX
## (NEGLIGENT MISREPRESENTATION AGAINST DORNBUSH)

107.   Plaintiffs repeat and restate each of the allegations in the preceding paragraphs as though fully set forth herein.

108.   Dornbush's position as long-time attorney and trusted advisor for Plaintiffs and his positions as the attorney for and a director of Haru and BNC, gave him unique and specialized expertise upon which Plaintiffs relied, and allowed him to foster a special relationship of trust and confidence between himself and Plaintiffs and such a relationship existed between them.  That relationship gave rise to a duty on the part of Dornbush to impart correct information concerning how the Put Option would be valued and what elements would be included and excluded in the valuation.

109.   Plaintiffs due to that relationship Plaintiffs relied on Dornbush to give them such correct information.

110.   Dornbush acted negligently in giving Plaintiffs information about how the Put Option would be valued and what elements would be included and excluded in the valuation and the information which he did give them was false.

111.   It was reasonable and foreseeable that Plaintiffs would rely on the information given them by Dornbush in view of his relationship with Plaintiffs and their past and present dealings.  Plaintiffs did, in fact, rely on Dornbush and the information he provided to them.  As a result Plaintiffs have sustained injury that was proximately caused by their reliance on Dornbush's statements of not less than $10.7 million.

## PRAYER FOR RELIEF

Plaintiffs demand judgment against Defendants as follows:

(a)     on Counts I through V, and VII and IX compensatory damages of not less

than $10.7 million;

(b)     on Count VI, imposition of a constructive trust and an accounting, and

such damages as are determined to be due to plaintiffs upon such accounting;

(c)     on Count VII, an award of not less than $3,717,996.20;

(d)     prejudgment interest on all counts;

(e)     punitive damages of not less than three times compensatory damages on

each count under which punitive damages are permitted;

(f)     legal fees, expert witness fees, costs and disbursements; and

(g)     such other and further relief as the Court may deem just and proper.

Dated: New York, NY
        August 25, 2006

DEUTSCH, COFFEY & METZ, LLP


By _____
      A member of the firm
      Attorneys for Plaintiffs
      18 East 41 Street, 6th Floor
      New York, NY 10017
      (212) 684-1111