```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MEI PING (BARBARA) MATSUMURA AND
CARL MILNER, AS TRUSTEE OF THE TRUST
U/W/O ARTHUR CUTLER, INDIVIDUALLY AND AS
SHAREHOLDERS OF HARU HOLDING CORP.,           **MEMORANDUM AND ORDER**

                          Plaintiffs,          06 Civ. 7609 (NRB)

          - against -

BENIHANA NATIONAL CORPORATION, AND
HARU HOLDING CORPORATION,

                          Defendants.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This litigation began over seven years ago, with a dispute regarding the valuation of a Put Option retained by plaintiffs in connection with their sale to defendants of a sushi restaurant chain in New York City. The substance of the dispute has been resolved over the course of extensive motion practice before this Court and the Second Circuit. Now pending before the Court are the cross-motions filed by the parties requesting declaration of entitlement to attorneys' fees. For the reasons stated herein, the Court grants in part and denies in part defendant's motion, and denies plaintiffs' motion.

**BACKGROUND**

The factual background of this case is presented more fully in our prior Memoranda and Orders of March 5, 2010 and July 9, 2013, as well as the Second Circuit's decision of March 5, 2012. See Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609 (NRB), 2010 WL 882968, at *1-*4 (S.D.N.Y. Mar. 5, 2010); 2013 WL 3465785, at *1-*3 (S.D.N.Y. July 9, 2013); 465 F. App'x 23, 24-47 (2d Cir. 2012). For the purposes of this motion, we set forth here only that factual and procedural history necessary to provide context to our decision.

## I. Factual Allegations

Plaintiffs are restaurateurs who founded Haru, a sushi restaurant chain, in New York City in 1996.[1] Approximately three years later, plaintiffs reached an agreement in principle to sell an 80% interest in Haru to defendant Benihana National Corporation, an international restaurant chain. See Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609 (NRB), 2010 WL 882968, at *1 (S.D.N.Y. Mar. 5, 2010). On August 5, 1999, Matsumura and Benihana signed a Stock Purchase Agreement ("SPA") containing the terms of the proposed acquisition. Section 11.7 of the SPA contained the following provision regarding attorneys' fees relevant to the instant motion:

---

[1] Plaintiff Mei Ping (Barbara) Matsumura owned and operated Haru with Arthur Cutler, whose ownership interest in the enterprise passed upon his death into a trust of which plaintiff Carl Milner is the trustee.

2

> In the event of any action at law or suit in equity in relation to this Agreement or any Schedule, Exhibit or other instrument or agreement required hereunder, the prevailing party in such action or suit shall be entitled to receive its attorneys' fees and all other costs and expenses of such action or suit.

See Ex. B to Defendant's Second Renewed Motion to Recover its Attorneys' Fees, filed on August 26, 2013. The SPA, which included in the same provision a New York choice of law, did not further define the term "prevailing party." The SPA also required that the parties execute a Stockholders' Agreement on the closing date, an unsigned copy of which was appended to the SPA.[2]

On December 6, 1999, the plaintiff consummated the sale to Benihana of 80% of plaintiffs' interest in Haru in exchange for $8,125,000 via the execution of a revised Stockholders' Agreement ("SHA"). See Ex. L to Declaration of Alfred N. Metz, Esq. in Support of Plaintiffs' Motion for Summary Judgment, filed Apr. 6, 2009, Dkt. 75. Pursuant to the SHA, plaintiffs received a Put Option, enabling plaintiffs, at their discretion, to compel Benihana to purchase plaintiffs' remaining 20% interest during a three-month time period in mid-2005. The SHA provided a pricing formula for the Put Option whereby an increase in Haru's consolidated cash flow, as defined therein,

---

[2] Further negotiation by the parties between the execution in August 1999 of the SPA and the transaction's closing date in December made certain amendments to the Stockholders' Agreement, a modified version of which was ultimately executed by the parties on December 6, 1999.

3

caused the value of plaintiff's interest to rise, while an increase in Haru's amount of company debt, also defined therein, caused the value of plaintiffs' interest to fall.[3] Id. The "Amount of Company Debt" was defined to include debt owed by Haru to majority owner Benihana. Id. ¶ 1.

Thereafter, Benihana employed an "interdepartment" notation in its accounting of Haru's consolidated financial statements. Pursuant to this system, Benihana recorded three major categories of debt it was owed by Haru: (1) Benihana's purchase price for Haru, (2) construction costs for new Haru restaurants, and (3) the costs of goods and services used in the day-to-day operations of the Haru restaurants.

When the Put Option window opened in 2005, plaintiffs duly exercised their option. Benihana applied the Put Option pricing formula delineated in the SHA (which, as noted above, incorporated interdepartment company debt) and determined that plaintiffs' remaining 20% interest was worth $3,717,996.20. Plaintiffs challenged Benihana's calculation and refused to consummate the Put Option transaction, instead filing the present suit.

---

[3] The relevant provision defined the "Put Price" as follows: "(A) Four and One-Half (4 1/2) times (B) the Company's Consolidated Cash Flow for the Pricing Fiscal Year, from which total is subtracted (C) the Amount of Company Debt, which total is divided by (D) the number of shares of Common Stock outstanding as at the date of such computation." SHA ¶ 1.

4

## II. Procedural History

Plaintiffs filed their initial complaint on August 25, 2006 and subsequently an amended complaint on July 10, 2007. The amended complaint set forth eleven separate causes of action against three defendants – Benihana, Haru Holding, and Benihana's General Counsel Darwin Dornbush. The claims included breach of fiduciary duty, fraud in the inducement, constructive fraud, breach of contract with regard to both the SPA and SHA, unjust enrichment, equitable claims for constructive trust and accounting, aiding and abetting the breach of fiduciary duty, negligent misrepresentation, a claim for "monies due and owing," and derivative claims against Haru. Underlying all these claims were plaintiffs' allegations that Benihana had unlawfully recorded as Haru's "interdepartmental" debt the purchase price it had paid to acquire Haru, a method known as "push-down accounting," which, by increasing the value of company debt, thereby decreased the value of plaintiffs' Put Option. In their amended complaint, plaintiffs sought compensatory damages of $10.7 million and punitive damages of three times compensatory damages, in addition to an award of not less than $3,717,996.20, representing Benihana's valuation of the Put Options due to plaintiffs.

Defendants moved to dismiss under Rule 12(b)(6), and the Court granted a large part of defendants' motion, dismissing all

claims other than those for breach of contract and breach of fiduciary duty. See Matsumura v. Benihana Nat'l Corp., 542 F.Supp.2d 245, 247 n.1 (S.D.N.Y. 2008). The Court also dismissed all claims brought against Dornbush individually, because plaintiffs had failed, inter alia, to plead the requisite scienter, reasonable reliance or existence of a fiduciary duty or indeed to allege actionable misrepresentations by Dornbush at all. Id. at 252-59.

Discovery followed with respect to the two remaining theories, after which the parties submitted their first set of cross-motions for summary judgment. In a March 5, 2010 decision, this Court considered and rejected the bulk of plaintiffs' remaining arguments. Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609 (NRB), 2010 WL 882968 (S.D.N.Y. Mar. 5, 2010). Specifically, we found that Benihana's use of push-down accounting of the purchase price did not constitute a breach of the SPA, nor did the recording of the purchase price or other costs as "interdepartmental debt" comprise a breach of the SHA. In addition to disposing of these claims for breach of contract, we also denied plaintiffs' claims for breach of fiduciary duty and for breach of the implied covenant of good faith and fair dealing, both of which had also challenged the push-down accounting of Haru's purchase price. In so finding, we noted that Benihana's accounting treatment of the purchase price was

permitted by the language of the operative contracts, complied with Generally Accepted Accounting Principles, and even met a standard of intrinsic fairness, given that plaintiffs had received a generous annual return on their Put Option investment. Id. at *9–*11.

In contrast to the many claims dismissed, our March 2010 decision granted only a single, limited aspect of plaintiffs' application. We found that Benihana had improperly included $393,551.61 in legal and investment banking expenses associated with its purchase of Haru in the "Amount of Company Debt" used to calculate the Put Price. Id. at *6. Because this push-down treatment of legal and banking fees constituted a breach of the SPA, the Court ordered the parties to exclude the fees in recalculating the value of plaintiffs' Put Option and complete the Put Option transaction that had been held in abeyance. Id. at *11. Since the amount spent on legal and banking fees was relatively low compared to the $8.125 million purchase price, this revision had only a modest impact on the value of the Put Option. Upon recalculation, the Put Option's price increased approximately $78,000 to $3,796,706.52. See Amending Order, October 18, 2010, Dkt. 98.

Plaintiffs subsequently appealed this judgment, and on March 5, 2012, the Second Circuit issued a Summary Order affirming most of our conclusions, but vacating and remanding a

limited issue for factual determination.[4] <u>Matsumura v. Benihana Nat'l Corp.</u>, 465 F. App'x 23 (2d Cir. 2012). Plaintiffs then petitioned the Second Circuit for rehearing with respect to the denial of pre-judgment interest and were denied. <u>Matsumura et al. v. Benihana et al.</u>, No. 10-4258, Petition for Panel Rehearing, Dkt. 83 (2d Cir. Mar 19, 2012); Order Denying Petition for Rehearing, Dkt. 100 (2d Cir. Mar. 30, 2012). Further summary judgment briefing followed before this Court, and, on July 9, 2013, this Court resolved the issue remanded to us by the Second Circuit in the defendants' favor. <u>See Matsumura v. Benihana Nat'l Corp.</u>, No. 06 Civ. 7609 (NRB), 2013 WL 3465785 (S.D.N.Y. July 9, 2013). Plaintiffs have appealed that most recent decision to the Second Circuit, but the parties later stipulated to dismiss plaintiffs' appeal without prejudice and subject to reinstatement following the decision on the motions before us now. <u>See</u> Orders of U.S. Court of Appeals for the Second Circuit, Dkts. 156, 157, 158.

Presently before the Court are the motions regarding the award of attorneys' fees. Defendant Benihana moves outright to recover its attorneys' fees, costs and expenses, while plaintiffs' motion instead merely seeks an order declaring them

---

[4] The issue was "whether the amount of day-to-day business expenses carried by Haru as interdepartmental debt was indeed canceled out by Haru's 'upstreaming' of revenue to BNC." <u>Matsumura</u>, 465 F. App'x at 29.

8

to be the "prevailing parties," leaving for further briefing the question of the amount of fees to be awarded.

## DISCUSSION

**III. Legal Standards**

Under the "American Rule," it is axiomatic that "attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." U.S. Fid. & Guar. Co. v. Braspetro Oil Serv. Co., 369 F.3d 34, 74 (2d Cir. 2004) (quoting Summit Valley Indus., Inc. v. United Bd. of Carpenters & Joiners, 456 U.S. 717, 721 (1982)). Parties may override the presumption by contractually agreeing to permit recovery of attorneys' fees, in which case "a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." Id. (quoting McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993)). Pursuant to New York law, which governs the operative SPA, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."[5] NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). Although awards of attorneys' fees typically fall within the Court's discretion, "where a contract authorizes

---

[5] Neither party here contests the validity or clarity of the applicable contract.

9

an award of attorneys' fees, such an award becomes the rule rather than the exception." McGuire, 1 F.3d at 1313.

Thus, the Court's threshold determination – and the subject of the instant motions — must be which, if any, party is the "prevailing party." Much of the case law regarding the determination of a "prevailing party" arises in the context of interpretation of statutes containing fee-shifting provisions or interpretation of Federal Rule of Civil Procedure 54, which entitles the prevailing party to recover costs, but not attorneys' fees. See, e.g. MTX Communications Corp. v. LDDS/WorldCom Inc., No. 95 Civ. 9569 (RO), 2001 WL 674142 at *1 (S.D.N.Y. Jun. 15, 2001) (noting that "[t]he cases defining the term 'prevailing party' generally arise in the context of federal statutes, such as the Civil Rights Attorney's Fees Awards Act of 1976.").

Where, as here, the parties' claims for attorneys' fees derive from contractual language, New York precedent instructs courts to consider "the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope." Sykes v. RFD Third Ave. I Assocs., LLC, 833 N.Y.S.2d 76, 77 (N.Y. App. Div., 1st Dep't 2007) (citing Excelsior 57th Corp. v. Winters, 641 N.Y.S. 675 (N.Y. App. Div., 1st Dep't 1996)). "To be considered a 'prevailing party,' one must simply prevail on the central claims advanced, and receive substantial

relief in consequence thereof." Id. at 77-78 (quoting Board of Mgrs. of 55 Walker St. Condominium v. Walker St., LLC, 774 N.Y.S.2d 701 (N.Y. App. Div., 1st Dep't 2004). In the absence of contractual language specifically defining "prevailing party," this precedent provides useful guidance.

## IV. Application

As an initial matter, we note and the parties acknowledge that any entitlement to attorneys' fees here arises exclusively from the language of the contract, and not from a statutory scheme. Hence, the precedent analyzing federal housing and civil rights statutes, upon which plaintiffs heavily rely, is of little value here.[6] See Pls. Mem. at 7-10. Indeed, that case law is expressly limited in some instances to the context of fee-shifting statutes, in light of the "two strong equitable considerations" at stake: first, the fact that a plaintiff bringing a statutory claim "is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority," and secondly, the fact that fees awarded to a prevailing plaintiff in the statutory context are awarded "against a violator of federal law."[7] Christiansburg Garment Co.

---

[6] For example, plaintiffs' contention that the Supreme Court rejected the "central claim" test for threshold determination of "prevailing party" status is beside the point, since in that case the Supreme Court was interpreting the meaning of the term as it appears in a civil rights statute. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Pls. Opp'n at 9 n.6.

[7] To be sure, some courts have opined that "the standards governing who is a 'prevailing party' in the statutory context should not significantly

v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 419 (1978) (internal citation omitted). Consequently, that precedent dictates stark differentiation between the fee-shifting treatment of prevailing party plaintiffs and prevailing party defendants. Id. at 418-422.

No such differentiation or equitable considerations are applicable in the case at bar, where the fee-shifting arrangement is a result only of a bargained-for contract between two sophisticated economic actors. Moreover, this suit, brought to consummate the Put Option transaction pursuant to governing contracts, hypothetically could have been initiated by Benihana, the defendant here. Given that the roles of plaintiff and defendant could have been reversed in this type of breach of contract action, we cannot subscribe to plaintiffs' implicit proposition that a defendant may only become a "prevailing party" if it has obtained "complete relief" or has succeeded on an offsetting counterclaim. See Pls. Opp'n at 7-13. Rather, our analysis here must be grounded in the contract-specific case law discussed supra, as well as that "basic precept of contract interpretation . . . that agreements should be construed to effectuate the parties' intent." Welsbach Elec. Corp. v. MasTec North America, Inc., 859 N.E.2d 498, 500 (N.Y. 2006).

---

differ in a contract case." MTX Communications Corp., 2001 WL 674142 at *1. However, for the reasons discussed supra, we do not endorse that view in this context.

Bearing these considerations in mind, we first examine the operative contract, which was the result of extensive negotiation between sophisticated parties, all of whom had business acumen, financial resources, and the representation of counsel.[8] The relevant contractual language provides, "[i]n the event of any action at law or suit in equity in relation to this Agreement or any Schedule, Exhibit or other instrument or agreement required hereunder, the prevailing party in such action or suit shall be entitled to receive its attorneys' fees and all other costs and expenses of such action or suit." SPA ¶ 11.7. The inclusion of this clause indicates an intent to dissuade the contractual parties from bringing non-meritorious claims, to eliminate the financial burden of defending such claims, and to ensure that each party bear the risk of pursuing unsuccessful arguments.

By any common sense measure, Benihana was the "prevailing party" in this action. It succeeded on the "central claim[] advanced" – i.e., the issue of whether its push-down accounting of Haru's purchase price constituted breach of contract or breach of fiduciary duty. Sykes, 833 N.Y.S.2d at 77. Benihana also successfully defended the large majority of secondary claims advanced by plaintiffs, including challenges to its push-

---

[8] See our January 2008 decision on defendant Dornbush's motion to dismiss for further discussion of the negotiation process and sophistication of the parties. Matsumura v. Benihana Nat'l Corp., 542 F.Supp.2d 245, 256-58 (S.D.N.Y. 2008)

13

down accounting treatment of construction costs and operating costs. Without the necessity of discovery, Benihana prevailed at the motion to dismiss stage on plaintiffs' claims for fraud in the inducement, constructive fraud, unjust enrichment, monies due and owing, and equitable claims for constructive trust and accounting. Though not directly relevant to this motion, it is worth noting that Benihana's General Counsel and Director Darwin Dornbush also successfully moved to dismiss all claims plaintiffs brought against him individually.

By contrast, Benihana was unsuccessful in defending only a single aspect of plaintiffs' voluminous complaint – the challenge to its push-down treatment of the $393,551.61 in legal and banking fees associated with its purchase of Haru. The consequent relief to plaintiffs was a $78,710.32 increase in the value of their Put Option, a relatively modest amplification when viewed in comparison with Benihana's initial valuation of the Put Option at $3,717,996.20 and the overall compensation received for the sale of Haru, which, including the money received in the Put Option transaction, amounts to nearly $12 million. The $78,710.32 gain is even further dwarfed by the amount of damages plaintiffs sought in their complaint – compensatory damages of not less than $10.7 million and punitive damages of three times that sum. When we evaluate "the true scope of the dispute litigated," followed by a comparison of

"what was achieved within that scope," the only reasonable conclusion is to regard Benihana as the prevailing party. Sykes, 833 N.Y.S.2d at 77.

Notwithstanding the limited relief they received on a subordinate claim, plaintiffs cannot lay claim to prevailing party status. Their legal position that they are the rightful prevailing parties is at odds with the result that they were hoping to achieve when they filed suit. Further, plaintiffs acknowledged – behaviorally if not explicitly – that the outcome was adverse to their position by filing two separate appeals to the Second Circuit of this Court's decisions, one of which remains pending. When the Circuit dismissed most of the arguments plaintiffs presented on their first appeal, plaintiffs unsuccessfully petitioned the Circuit for rehearing. Defendants, by contrast, have filed no appeals. While not in any way dispositive, these measures do not suggest that plaintiffs themselves believe that they prevailed.

To be sure, plaintiffs did receive the relief described supra on a portion of their complaint that certainly could have been brought as a stand-alone claim, in which case the outcome regarding prevailing party status may well have been quite different. Had they done so, however, the effort and expense invested in this suit would have been of an entirely different magnitude. It is not too speculative to imagine that a narrower

dispute may even have been resolved by settlement without the need for lengthy, costly litigation. Nevertheless, despite early setbacks, plaintiffs pressed on, thereby increasing the legal fees that have accumulated over the course of over seven years of litigation. To now find that plaintiffs were the prevailing party, as plaintiffs urge, would be to disregard our obligation to effectuate the intent of the parties, who drafted Section 11.7 of the SPA presumably in an effort to avoid precisely that scenario.

**V. Award of Fees Deferred**

The parties have neither fully briefed the issue of whether the requested fees are reasonable, nor have they presented the typically required detail or documentation with respect to the amount of fees sought, perhaps recognizing that such effort would be misplaced before plaintiffs' pending appeal before the Second Circuit is decided. We cannot disagree with their assessment. Accordingly, we do not require further submissions regarding the particulars of the fees requested at this time. Instead, we deny that portion of defendant's motion without prejudice and defer the consideration thereof until after the Second Circuit has addressed the merits of the plaintiffs' pending appeal. See Fed R. Civ. P. 54(d)(2)(B); Tancredi v. Metropolitan Life Ins. Co., 378 F.3d 220, 225-26 (2d Cir. 2004) ("If an appeal on the merits of the case is taken, the

16

[district] court may . . . deny the motion [for fees] without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.") (citing 1993 Advisory Committee's notes). This deferral does not prevent the merits judgment we have rendered from being considered final for purposes of appeal. See Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs, 134 S. Ct. 773, 777 (2014).

## CONCLUSION

For the foregoing reasons, defendant Benihana's motion to recover its attorneys' fees, costs and expenses is granted insofar as the Court orders that Benihana is the prevailing party entitled to fees pursuant to the governing contract. Defendant Benihana's request for a specific award of attorneys' fees is denied without prejudice to its renewal within 14 days of the entry of the appellate mandate on this Court's docket. Plaintiffs' motion is denied. This Memorandum and Order resolves Docket Nos. 144 and 146.

Dated: New York, New York
April /7, 2014

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiffs**

Alfred N. Metz, Esq.
Deutsch, Metz & Deutsch, LLP
18 East 41st Street
New York, NY 10017

**Attorneys for Defendants**

Alan H. Fein, Esq.
Adam M. Schachter, Esq.
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130